United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Herederos de Roberto Gomez Cabrera, LLC, Plaintiff, <br><br> v. <br><br> Teck Resources Limited, Defendant. | ) ) ) ) ) Civil Action No. 20-21630-Civ-Scola ) ) ) |

### Order Granting Motion to Dismiss

This matter is before the Court upon Defendant Teck Resources Limited's ("Teck") motion to dismiss (ECF No. 14.) For the reasons set forth below, the motion is **granted**.

**1. Background**

The Plaintiff Herederos de Roberto Gomez Cabrera, LLC ("HRGC") filed this action against the Defendant Teck pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act," or the "Act"). The Act creates a private right of action against any person who traffics in confiscated property in Cuba. *See* 22 U.S.C. § 6082(a)(1)(A). The Helms-Burton Act serves to "protect United States nationals against confiscatory takings and wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6).

The Plaintiff HRGC company is owned by the heirs of Robert Gomez Cabrera. (ECF No. 7 ¶ 8.) In July 1956, Gomez Cabrera, through his company Rogoca Minera, S.A., purchased twenty-one mines spanning over 624.91 acres of land in the town of El Cobre in Cuba. (*Id.* ¶ 6.) Gomez Cabrera operated the mines until the property was confiscated by the Cuban government (the date of which is unidentified). (*Id.* ¶ 7.) In September 1969, Cabrera's children inherited all rights, title, and interests held by Cabrera in Rogoca Minera, S.A., including the twenty-one mines, mining equipment, and installations. (*Id.* ¶¶ 7,8.) Cabrera's children incorporated Plaintiff HRGC, a Florida limited liability company and assigned it their claims to the confiscated property (*Id.* ¶ 11.) The Plaintiff is the holder of all interests inherited by Cabrera's children who were citizens of the United States on March 12, 1996. (*Id.*)

In February 1994, Defendant Teck, a Canadian corporation with its principal place of business in Canada, and Joutel Resources Limited ("Joutel"), a Canadian corporation, engaged in a joint venture to explore and develop land holdings in Cuba. (*Id.* ¶ 25.) At the time, Joutel held exclusive mineral exploration and development rights over 2485 miles of land in Cuba, including the confiscated mines. (*Id.* ¶ 26.) In January 1996, Teck and Joutel entered

into a written contract giving Teck a 50% ownership in all of Joutel's holdings in Cuba. (*Id.* ¶ 27.) Teck was charged with operating the mines developed on Joutel's concessions from the Cuban government. (*Id.* ¶ 30.) One month later, Teck and Joutel entered into a written agreement with Geominers, S.A. ("Geominers"), a Cuban government-owned company, to explore and extract minerals from "mining lands in Cuba." (*Id.* ¶ 24.). Teck continued managing the mining operations through 2009. (*Id.* ¶ 32.) Today, Teck owns seven subsidiaries in Washington and operates a zinc mine in Alaska (*Id.* ¶ 25.)

In its one-count amended complaint, the Plaintiff alleges that Teck violated Title III of the Helms-Burton Act. (*Id.* ¶ 41.) The Plaintiff claims that Teck knowingly and intentionally trafficked on confiscated property. (*Id.* ¶¶ 31, 34.)

Teck moves to dismiss the amended complaint in its entirety on several grounds. Teck argues that the Court lacks personal jurisdiction over Teck and even if the Court did have jurisdiction, the complaint has failed to state a claim. (ECF No. 14 at 1.) In support of its motion to dismiss, Teck attached the affidavit of Amanda Robinson, corporate secretary of Teck, in which she represents that Teck is not licensed to conduct business in Florida and that its subsidiaries are totally independent from Teck in that they have wholly different boards of directors and officers, as well as separate accounting. (ECF No. 14-2.) Teck also moved to stay discovery until the Court ruled on the motion to dismiss. (ECF No. 28.) The Plaintiff opposed such relief. (ECF No. 34.)

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

In its motion to dismiss, Teck argues that the amended complaint should be dismissed because the Court lacks personal jurisdiction over it, the complaint fails to allege that HRGC has an actionable ownership interest or that Teck intentionally trafficked on the confiscated property. In response, the Plaintiff argues that the Court has jurisdiction over Teck under the federal long-arm statute and that the amended complaint has sufficiently stated a claim for relief under Title III of the Act.

### A. Jurisdiction Over Foreign Defendant
### 1. Principles of Jurisdiction

Where a plaintiff meets its initial burden to make out a prima facie case for a court's exercise of personal jurisdiction over a defendant by providing sufficient evidence in the complaint to withstand a motion for to dismiss, courts may then consider affidavits, documents, or other testimony provided by the defendant challenging the allegations supporting personal jurisdiction. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *see also Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Should a defendant provide such material, the burden then shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Stubbs*, 447 F.3d at 1360. All reasonable inferences must be construed in favor of the plaintiff. *Id.* Before courts may consider materials provided by a defendant and plaintiff the court must first decide if the plaintiff has made out a *prima facie* case supporting the court's exercise of personal jurisdiction.

To determine whether a party has adequately alleged personal jurisdiction over a foreign defendant, the Court first asks whether there is jurisdiction under Florida's long-arm statute and next determines whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). Florida's long-arm statute provides two means for subjecting a foreign defendant to the jurisdiction of Florida courts: 1) "a defendant is subject to *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida." *Id.* (internal quotations omitted) (emphasis in original) (discussing Fla. Stat. § 48.193); and 2) "a defendant is subject to *specific* personal jurisdiction— that is, jurisdiction over suits that arise out of or related to a defendant's contacts with Florida—for conduct specifically enumerated in the statute." Under either form of personal jurisdiction, the defendant must have "'certain

minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The inquiry focuses on the defendant's contacts with the state, and not the "random, fortuitous, or attenuated" contacts it has by interacting with other persons affiliated with the state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

### 2. General Jurisdiction

Regarding general jurisdiction under Florida's long-arm statute, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2) (2020). Under the U.S. Constitution, a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation's place of incorporation and its principal place of business are generally the only "limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 137 (citation omitted). Here, it is undisputed that Teck is not a Florida resident as it is incorporated in Canada and has its principle place of business there. Accordingly, the Court finds that Teck is not subject to the Court's general personal jurisdiction. *Scanz Techs., Inc. v. JewMon Enterprises, LLC*, No. 20-22957-CIV, 2021 WL 65466, at *3 (S.D. Fla. Jan. 7, 2021) (Scola, J.)

### 3. Specific Jurisdiction

Because the Court does not have general personal jurisdiction over Defendant Teck, the Court must determine if Plaintiff HRGC has prima facie plead that the Court has specific personal jurisdiction over Teck.

"[A] Florida court can exercise specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the enumerated categories set forth in section 48.193(1)(a)." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016) (Moore, J.) (citing *Schulman*, 624 F. App'x at 1004–05). The Plaintiff fails to explain how its claim for unlawful trafficking in Cuba is related to Teck's activities in Florida, which at this point appear to be nonexistent. Indeed, the amended complaint alleges that Teck is a

Canadian corporation with its principle place of business in Canada, with subsidiaries in Washington and Alaska, and is otherwise silent as to whether Teck has *any* contacts with Florida. For these reasons, HRGC has failed to plead specific personal jurisdiction over Teck.

### 4. Rule 4(k)(2)

HRGC dedicates most of its response to argue that the Court has jurisdiction over Teck under Federal Rule of Civil Procedure 4(k)(2) or the federal long-arm statute. This is argument is likewise unavailing.

"Rule 4(k)(2)—the so-called federal long-arm statute—permits a federal court to aggregate a foreign defendant's nationwide contacts to allow for personal jurisdiction provided that two essential conditions are met: '(1) plaintiff's claims must arise under federal law; and (2) the exercise of jurisdiction must be consistent with the Constitution and laws of the United States.'" *Thompson,* 174 F. Supp. 3d at 1337. The rule is neither applicable nor relevant until a court finds that a defendant is not subject to personal jurisdiction in the courts of any state. *Storm v. Carnival Corp.*, No. 20-22227-CIV, 2020 WL 7415835, at *11 (S.D. Fla. Dec. 18, 2020) (Torres, MJ). Once it becomes clear that there is no specific or general jurisdiction under Florida's long-arm statute, the analysis on whether there is personal jurisdiction under Rule 4(k)(2) turns on whether there are enough minimum contacts with the United States as a whole. *Id.*

As discussed above, there is no specific or general jurisdiction under the state long-arm statute over Teck, nor has Teck identified any other forum where it is amenable to jurisdiction. Accordingly, the Court could use Rule 4(k)(2) to establish jurisdiction over Teck if: (1) the exercise of jurisdiction must be consistent with the Constitution and the laws of the United States; and (2) the claim must arise under federal law. *In re Takata,* 396 F. Supp. 3d at 1150-51. Because there is no dispute that the Plaintiff's claims arise under federal law, the Helms-Burton Act, the Court must determine whether the exercise of federal jurisdiction over Teck would comport with the Constitution and the laws of the United States, in other words, comports with due process. The answer is a resounding no.

"Rule 4(k)(2) was implemented to fill a lacuna in the enforcement of federal law in international cases*." Id.* at 1337 (internal quotations omitted). However, courts rarely invoke jurisdiction under the rule. *Id.* Indeed, "[i]n the wake of the Supreme Court's decision in *Daimler,* it appears unlikely that general jurisdiction over a foreign defendant could ever be available under 4(k)(2)." *Id.* at 1338 n.9 (citing *Daimler,* 571 U.S. at 138 (rejecting as "unacceptably grasping" the plaintiffs' position that the Court should "approve

the exercise of general jurisdiction in every State in which a corporation "engages in a substantial, continuous, and systematic course of business.")).

This is not one of those uncommon cases. Teck's contacts with the United States through its subsidiaries are too attenuated to support jurisdiction under Rule 4(k)(2). The Plaintiff advances several ambiguous allegations that do not demonstrate specific conduct by Teck in the United States. The amended complaint vaguely alleges Teck "directly or indirectly, owns, operates, controls, manages, and/or supervises at least seven U.S.-based subsidiaries in the State of Washington," and "Teck directly or indirectly, owns, operates, controls, manages, and/or supervises one of the world's largest zinc mines" in Alaska and Washington. (ECF No. 7 ¶¶ 14, 15.) These allegations are not sufficient to establish jurisdiction under Rule 4(k)(2) because there is no alleged connection between Teck and the alleged subsidiaries. *See Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1006 (11th Cir. 2015) (holding that a French manufacturer of catamarans that had distribution agreements with dealers in Florida, marketed its vessels in Florida, attended a trade show in Florida, and had an agreement with a Maryland-based financing company to help buyers and dealers in the United States satisfied *neither* Florida's long-arm statute for general jurisdiction *nor* Rule 4(k)(2)); *see also In re Takata*, 396 F. Supp. 3d at 1151-52. (finding that the plaintiffs had not established jurisdiction under the federal long-arm statute because the plaintiff had ambiguously alleged that the foreign defendant was in the business of designing, developing, manufacturing, marketing, and selling the class vehicles); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1318 (S.D. Fla. 2017) (Altonaga, J.)(finding that the Court did not have jurisdiction over the defendant under Rule 4(k)(2) because the alleged activity in the United States involved other entities not named in the amended complaint).

Moreover, even if the subsidiaries' mining activities could be attributed to Teck, they cannot be said to be related to the unlawful trafficking in the confiscated property in Cuba. *GolTV, Inc.*, 277 F. Supp. 3d at 1318 (finding that the Court did not have jurisdiction over defendant under the federal long-arm statute because the defendant's contacts with the United States did not give rise to the claims raised in the amended complaint).

### B. Jurisdictional Discovery

In its response in opposition, the Plaintiff argues that "[a]t a minimum, it is appropriate for this Court to exercise its discretion to order jurisdictional discovery [on]…Defendant's continuous and systemic contacts within the United States, which information is in Defendant's exclusive control and is

disputed by Defendant." (ECF No. 23 at 11.) The request is denied on several grounds.

To begin with, the Eleventh Circuit has explained that in certain cases district courts should not "reserve ruling on [a pending] motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not before coming through the courthouse doors, even though the court would have the inherent power to do so." *Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). Here, the Plaintiff was well-aware of the fact-intensive analysis that federal courts apply when deciding issues of personal jurisdiction over nonresident defendants. In this case, the Plaintiff has known that Teck would argue that this Court lacks personal jurisdiction over the matter since the filing of the subject motion to dismiss in September 2020. Indeed, in the joint scheduling report filed the next month, the parties indicated that they had considered the need for jurisdictional discovery. (ECF No. 17.) Nonetheless, HRGC has not moved for such relief.

Additionally, the Plaintiff's request is procedurally improper. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009) (denying jurisdictional discovery where the plaintiff recognized the potential utility of jurisdictional discovery by the time it filed its response to motion to dismiss but never formally moved the district court for jurisdictional discovery and instead, buried the request for such relief in its briefs); *see also Thompson*, 174 F. Supp. 3d at 1339 (denying request for leave to take jurisdictional discovery because the plaintiff did not move for such relief, rather, couched the request as an alternative argument in their response in opposition to a motion to dismiss). Moreover, even if the Plaintiff had properly moved for jurisdictional discovery, there exists no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery. *Thompson*, 174 F. Supp. 3d at 1339. Indeed, the Plaintiff has not set forth *any* evidence to establish jurisdiction or rebut Teck's evidence that its subsidiaries in the United States are totally independent from it or that their activities relate to any mining in the confiscated properties. *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) (Cooke, J.) (denying request to take jurisdictional discovery because the request was buried in the response in opposition to motion to dismiss and because the plaintiff had not any evidence to rebut the defendant's evidence against jurisdiction).

### C. The Plaintiff Fails to State a Claim

Even if the Court had jurisdiction to hear this dispute, the amended complaint is due to be dismissed on its merits. Teck argues that the amended complaint should be dismissed because HRGC failed to allege it has an

actionable ownership interest that was acquired prior to March 12, 1996 and that it did not sufficiently allege that Teck knowingly and intentionally trafficked in confiscated property.

The Court agrees that HRGC did not sufficiently allege that it had an actionable ownership interest because it did not allege that it obtained the interest prior to March 12, 1996. The relevant provision of the Helms-Burton Act provides:

> In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996.

22 U.S.C. § 6082(a)(4)(B).

HRGC does not dispute that the subject properties were confiscated before March 12, 1996 (although the Court notes the complaint fails to identify the date of confiscation) and that it obtained ownership of its claim to the subject properties after March 12, 1996. Indeed, in its response in opposition, HRGC indicates that "in 2019, the heirs [of Robert Gomez Cabrera] pooled their respective causes of action together by forming Herederos De Roberto Gomez Cabrera, LLC ["HRGC"]; which is presently seeking relief in this action..." (ECF No. 23 at 18.) HRGC contends that the statute does not bar this action because it obtained the ownership of the claim to the confiscated property by way of assignment in 2019. This argument is unavailing.

The Act expressly requires that actionable claims must be acquired before March 12, 1996. Thus, while the individual heirs may have acquired an ownership interest before that date, the statute is clear: no United States national may bring an action unless he acquired ownership of the claim before March 12, 1996. *See Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (Scola, J.), *affirmed by Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011, 1012 (11th Cir. 2021); *see also Garcia-Bengochea v. Royal Caribbean Cruises, Ltd.*, No. 1:19-CV-23592-JLK, 2020 WL 6081658, at *2 (S.D. Fla. Oct. 15, 2020) (King, J.) The statute makes no distinctions with respect to the method of acquiring the claim. *Glen v. Trip Advisor LLC*, No. CV 19-1809-LPS, 2021 WL 1200577, at *7 (D. Del. Mar. 30, 2021) (Stark, J.).

The Court also agrees that HRGC has not sufficiently alleged that Teck knowingly and intentionally trafficked in the confiscated property. Under the Act, "a person 'traffics' in confiscated property if that person knowingly and intentionally ... engages in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13). "[T]he only companies that will run afoul of this new law are those that are knowingly and intentionally

trafficking in the stolen property of U.S. citizens." 142 Cong. Rec. H1724-04, at H1737 (Mar. 6, 1996). The amended complaint primarily offers conclusory allegations that Teck knowingly and intentionally trafficked in the confiscated property. (ECF No. 7 ¶¶ 32, 33, 34). *Gonzalez*, 2020 WL 1169125, at *2. The amended complaint also claims that Teck had "actual or constructive knowledge" that it was trafficking in confiscated property by virtue of the Cuban constitution, laws, and public records, and notice given to Joutel by the heirs. (*Id.* ¶ 31.) The first half of this paragraph is conclusory as it relies on unidentified laws and records and likewise is insufficient to state a claim. While the second half is a closer call, it is insufficient to state a claim as it relies on notice given to *another* entity that went into business with Teck sometime after the property was confiscated. Because the Court finds that the amended complaint is due to be dismissed for lack of jurisdiction and as a matter of law, the Court need not address remaining grounds for dismissal.

### 5. Conclusion

For the reasons set forth above, the Court **grants** Teck's motion to dismiss (**ECF No. 14**) and dismisses HRGC claims without prejudice. HRGC alternatively seeks permission to file a second amended complaint. (ECF No. 23 at 23.) This request is improper and is therefore denied. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (quotations omitted). The Court thus dismisses the amended complaint **without leave to amend**.

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**. **(ECF Nos. 26, 36, 38.)**

**Done and ordered** at Miami, Florida on April 27, 2021.

Robert N. Scola, Jr.
United States District Judge