United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Herederos de Roberto Gomez Cabrera, LLC, Plaintiff, <br><br>v. <br><br>Teck Resources Limited, Defendant. | Civil Action No. 20-21630-Civ-Scola |

**Order Denying Motion for Reconsideration**

This matter is before the Court upon Plaintiff Herederos de Roberto Gomez Cabrera, LLC's ("HRGC") motion for reconsideration of this Court's order dismissing the case without leave to amend. (ECF No. 40.) In its motion, the Plaintiff seeks reconsideration of the Court's dismissal without leave to amend and denial of jurisdictional discovery, and alternatively, leave to amend. Defendant Teck Resources Limited ("Teck") opposes the motion, arguing that the Plaintiff rehashes the arguments already denied by the Court and that even if reconsideration were appropriate, leave to amend would be futile. (ECF No. 41.) HRGC timely replied. (ECF No. 44.) For the reasons set forth below, the motion is **denied**.

1. **Background**

The Plaintiff Herederos de Roberto Gomez Cabrera, LLC filed this action against the Defendant Teck pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act," or the "Act"). HRGC is a Florida company owned by the heirs of Robert Gomez Cabrera. (ECF No. 7 ¶ 8.) In July 1956, Gomez Cabrera, through his company Rogoca Minera, S.A., purchased twenty-one mines spanning over 624.91 acres of land in the town of El Cobre in Cuba. (*Id.* ¶ 6.) The mines were confiscated by the Cuban government at some point in time. In September 1969, Cabrera's children inherited all rights, title, and interests held by Cabrera in Rogoca Minera, S.A., including the twenty-one mines, mining equipment, and installations. (*Id.* ¶¶ 7,8.) Cabrera's children incorporated HRGC, a Florida limited liability company and assigned it their claims to the confiscated property (*Id.* ¶ 11.) The Plaintiff is the holder of all interests inherited by Cabrera's children who were citizens of the United States on March 12, 1996. (*Id.*) The amended complaint claims that Teck, a Canadian corporation, trafficked on the confiscated property.

In its one-count amended complaint, HRGC alleges that Teck violated

Title III of the Helms-Burton Act. (*Id.* ¶ 41.) Teck moved to dismiss the amended complaint in its entirety because the Court lacked personal jurisdiction over Teck. Additionally, Teck claimed, that even if the Court had jurisdiction over the case, the amended complaint failed to state a claim for relief.

After careful consideration, the Court granted Teck's motion to dismiss on several grounds. The Court found that HRGC had failed to allege sufficient facts to establish personal jurisdiction over Teck. The Court also denied the Plaintiff's argument that jurisdiction could be established under the federal long-arm statute because Teck's contacts with the United States through its mining subsidiaries are too attenuated to support jurisdiction under Rule 4(k)(2). The Court further explained that even if the subsidiaries' mining activities could be attributed to Teck, they cannot be said to be related to the unlawful trafficking in the confiscated property in Cuba and thus did not establish jurisdiction. The Court also denied HRGC's claim for jurisdictional discovery because it did not file a motion requesting same despite indicating its intent to seek jurisdictional discovery as early as September 2020.

The Court went a step further and granted the motion to dismiss on its merits. The Court found that even if jurisdiction had been established, the amended complaint was due to be dismissed for failure to state a claim. The amended complaint did not sufficiently allege that HRGC had an actionable ownership interest because it did not allege that it obtained the interest prior to March 12, 1996. Lastly, the Court determined that HRGC had not sufficiently alleged that Teck knowingly and intentionally trafficked in the confiscated property. Instead, the amended complaint offered conclusory allegations based on unidentified laws and records, and at best attempted to establish notice through that a separate entity knew. The Court denied the Plaintiff's request for leave to amend because it was embedded in its response in opposition to the motion and was therefore, improper. The Court granted the motion to dismiss, dismissed the claims without prejudice, and closed the case.

HRGC filed a motion to reconsider the Court's order granting the motion to dismiss. (ECF No. 40.) HRGC requests that the Court reconsider its findings regarding jurisdictional discovery. (*Id.* at 2.) HRGC argues that it had timely served jurisdictional discovery on Teck, had requested the ability to take jurisdictional discovery in other Court filings, and that jurisdictional discovery should be permitted in the interests of due process and judicial economy. (*Id.*) HRGC also seeks reconsideration of the Court's decision to dismiss the complaint without leave to amend and requests leave to file a second amended complaint. (ECF No. 40 at 1.) HRGC attached the proposed second amended complaint to its motion. (ECF No. 40-1.)

Teck opposes the motion arguing that HRGC's motion simply rehashes the arguments previously raised and rejected and improperly seeks to amend the complaint for a second time based on facts that could have been alleged in the first amended complaint. (ECF No. 41 at 1.) Teck further argues that even if the motion to reconsider were procedurally proper, it still fails to set forth good cause for amendment after the Court-ordered date to amend had passed and that amendment would be futile. (*Id.* at 2.)

### 2. Legal Standard

"[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). "Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at 1563 (citation omitted). Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, however, a motion to reconsider is not ordinarily warranted.

### 3. Analysis

HRGC requests that the Court reconsider its findings regarding jurisdictional discovery and reasoning for denying leave to amend the amended complaint. The Court turns to each argument in turn.

#### A. Jurisdiction Under Rule 4(k)(2) and Jurisdictional Discovery

HRGC seeks reconsideration of the Court's ruling on jurisdiction under Rule 4(k)(2) and its denial of jurisdictional discovery. It relies on the clear-error and new evidence prongs of the reconsideration analysis. HRGC avers that the Court misapprehended its argument as to jurisdiction under Rule 4(k)(2),

because the Florida long-arm statute is irrelevant, the Court did not consider the "effects doctrine," and there is new evidence regarding Teck's subsidiaries in the United States. These arguments are unavailing.

The Court conducted a complete jurisdictional analysis including whether jurisdiction could be established under both the Florida and federal long arm-statute. Moreover, contrary to HRGC's assertion that "the Court recognized that…Rule 4(k)(2) is appropriate to establish jurisdiction over Defendant," the Court found that the amended complaint satisfied only one of the two required elements to establish jurisdiction under Rule 4(k)(2). *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016) (Moore, J.) ("Rule 4(k)(2)—the so-called federal long-arm statute—permits a federal court to aggregate a foreign defendant's nationwide contacts to allow for personal jurisdiction provided that two essential conditions are met: '(1) plaintiff's claims must arise under federal law; and (2) the exercise of jurisdiction must be consistent with the Constitution and laws of the United States.'"). Critically, the Court found that although HRGC's claims arose under federal law, the amended complaint failed to tie Teck to the actions of its subsidiaries in the United States. This analysis is consistent with the effects test. *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1150 (S.D. Fla. 2019) (Moreno, J.) (finding the plaintiffs did not establish jurisdiction over foreign defendants because the "Plaintiffs set forth no allegations establishing the nature of the corporate relationship between the subsidiary Domestic Defendants and their parents.")

The Court also denies HRGC's argument that the Court erred in denying its request for jurisdictional discovery. HRGC concedes that it did not formally file a motion for leave to take jurisdictional discovery. (ECF No. 40 at 6.) Notwithstanding, HRGC argues that it should be permitted to do so despite not formally requesting such relief because it notified the Court that it intended to seek jurisdictional discovery and it served jurisdictional discovery on Teck during the time the motion to dismiss was pending.

HRGC is "foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that [it] should have had — but did not — before coming through the courthouse doors." *Auf v. Howard Univ.*, No. 19-22065-CIV, 2020 WL 1452350, at *10 (S.D. Fla. Mar. 25, 2020) (Smith, J.) (citing *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (S.D. Fla. 2016)). Put differently, "the purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is *not* a vehicle for a 'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." *Id.* As explained in the Court's order granting the motion to dismiss, the amended complaint did not allege any facts

supporting personal jurisdiction over Teck based on its domestic subsidiaries.

Additionally, upon review of HRGC's request for production, attached to the subject motion, the Court finds that HRGC has not made a showing that it served jurisdictional discovery while the motion to dismiss was pending. The requests for production do not seek jurisdictional information. On the contrary, the discovery requests seek information regarding Teck's corporate relationship with a non-subsidiary company Joutel Resources Limited. (ECF No. 40-2.) The requests also seek documents relating Teck's relationship with Cuban businesses and different government entities. Critically, *none* of the requests seek information specific to Teck's relationships with its subsidiaries in the United States. Thus, the discovery that was pending while the motion to dismiss was pending would not have changed the Court's determination on jurisdiction. *Compare RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 791 (11th Cir. 2014) ("Because the facts [plaintiff] sought would not have affected the district court's jurisdiction, it was not an abuse of discretion for the district court to deny the motion for jurisdictional discovery."); *with Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729-31 (11th Cir. 1982) (remanding because dismissal was "premature" where plaintiff's requests for production of documents bearing on jurisdiction remained outstanding) and *Rd. Space Media, LLC v. Miami-Dade Cty.*, No. 19-21971-CIV, 2020 WL 2988424, at *1 (S.D. Fla. Apr. 24, 2020) (Scola, J.).

Moreover, as explained in this Court's order on the motion to dismiss, HRGC's request for jurisdictional discovery is untimely. HRGC argues that it previously raised the issue of jurisdictional discovery: (1) the parties' joint scheduling report (ECF No. 17), (2) its response in opposition to the motion to dismiss (ECF No. 23), (3) the parties status report; and (4) opposition to Teck's motion to stay discovery. To be clear, the subject motion is HRGC's first motion for jurisdictional discovery, filed after the Court dismissed the complaint and closed this case. HRGC has been on notice that the parties disagreed on whether jurisdictional discovery was appropriate since October 13, 2020 or six months before the Court ruled on the motion to dismiss. (ECF No. 17 at 2.) At that point, the onus was on HRGC to properly seek jurisdictional discovery. *Howard Univ.*, 2020 WL 1452350, at *10 (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009)). In *Mazer*, the plaintiff argued that rather than dismissing the case for lack of personal jurisdiction over defendant, the district court should have deferred a ruling on the motion to dismiss and granted plaintiff's "requests" for jurisdictional discovery. *Id.* Rejecting that argument, the Eleventh Circuit noted that, despite recognizing the potential utility of jurisdictional discovery months in advance, the plaintiff "never formally moved the district court for jurisdictional discovery but, instead,

buried such requests in its briefs as a proposed alternative to dismissing … [the claims]." *Id.* The court also noted that plaintiff delayed by several months before serving deposition notices and "failed to take any formal action to compel discovery or properly issue an … effective subpoena…." *Id.* As a result, the Eleventh Circuit concluded that the district court did not err in dismissing the case because "[a]ll in all, [the plaintiff] should have taken every step possible to signal to the district court its immediate need for such discovery … [and yet] failed to take any of these reasonable steps to seek discovery." *Id.* (citation omitted). Here, HRGC did not serve discovery requests that would aid in determining whether jurisdiction exists nor did HRGC move for leave to take jurisdictional discovery, or to compel outstanding discovery.

Lastly, HRGC's argues that "new evidence" warrants reconsideration of the Court's denial for jurisdictional discovery. HRGC recently discovered materials from a "Global Basic Materials," in which Teck acknowledges its Alaskan mine as one of its operations. (ECF No. 44-1.) HRGC also obtained financial disclosures that consolidated the revenues for Teck subsidiaries and identified several legal contingencies. (ECF No. 44-2). HRGC also submitted financial statement identifying several subsidiaries within the United States and in Chile (ECF No. 44-3.) The financial statement includes boilerplate language that "All subsidiaries are entities that [we] control, either directly or indirectly," by owning 50% or more of the voting rights, or potential voting rights."

HRGC's argument is unavailing for several reasons. The Court is not convinced that Teck's financial disclosures, indisputably public documents, were unavailable to HRGC prior to the filing of this action. Additionally, even accepting the evidence is new, the information is vague as to the amount of control Teck has over its subsidiaries. Indeed, none of the new evidence is incorporated into the allegations of the proposed second amended complaint for purposes of establishing jurisdiction. Additionally, the new evidence does not overcome Amanda Robinson's, corporate secretary of Teck, affidavit. Robinson states that Teck a Canadian corporation and that its subsidiaries are totally independent from Teck in that they have different boards of directors and officers, as well as separate accounting. (ECF No. 14-2.) *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) (Cooke, J.) (denying request to take jurisdictional discovery because the request was buried in the response in opposition to motion to dismiss and because the plaintiff had not any evidence to rebut the defendant's evidence against jurisdiction).

### B. Motion for Leave to Amend First Amended Complaint

HRGC also seeks leave to amend its complaint to include jurisdictional allegations, add the individual heirs as the Plaintiffs, and allege facts regarding Teck's knowing and intentional trafficking. (ECF No. 40 at 11.) HRGC argues that a denial of its request would result in manifest injustice against the Plaintiff because if it has to file a new action it will be running against a statute of limitations and be subject to additional fees. (*Id.* at 10.)

HRGC requested leave to amend the amended complaint in its response in opposition to the motion to dismiss, which is improper. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Teck's motion to dismiss put HRGC on notice of the deficiencies of its complaint. While the motion was pending, HRGC had a choice: stand on its pleading and oppose the motion to dismiss or review the merits of the motion and request leave to amend the operative complaint. *Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2020 WL 1472302, at *2 (S.D. Fla. Mar. 26, 2020) (Scola, J.). HRGC made the strategic decision to oppose the motion to dismiss and lost. The Court will not afford it a second bite of the apple, particularly, where it declined to "follow the well-trodden procedural path toward amendment." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. App'x 925, 930 (11th Cir. 2016) (also noting the propriety of dismissal with prejudice "where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so"). While it is certainly true that our legal system favors the resolution of cases on their merits, that rule is not without limits. Especially where, as here, HRGC's own strategic decisions dictated the course of litigation.

Further, HRGC's argument that amendment should be allowed under Rule 15(a)(2) is misplaced. HRGC relies on Federal Rule 15(a)(2) which provides "[t]he court should freely give leave" to amend "when justice so requires." When leave to amend, however, is sought *after* the deadline to amend the pleadings has passed, as here, the movant must do more than argue leave is due under Federal Rule of Civil Procedure 15(a). That is, the movant must also show "good cause" under Federal Rule of Civil 16(b) in order to obtain the right to amend. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met

despite the diligence of the party seeking the extension.'" *See Sosa*, 133 F.3d at 1418. Thus, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (Ungaro, J.). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play. *See* Fed. R. Civ. P. 15(a)(2). While the standard under Rule 15(a) is lenient, still, "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment." *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted).

  HRGC's motion to reconsider does not even cite to Rule 16(b) and fails to set forth the necessary showing of good cause. Upon review of the proposed second amended complaint, the Court finds that HRGC attempts to supplement its complaint with facts that have been known to it since the inception of this action (and likely before that). The proposed complaint seeks to add the individual heirs as plaintiffs because they allegedly obtained their interests in the mining properties before March 12, 1996, which was known prior to the filing of this complaint. However, even if the Court allowed substitution of the plaintiffs, amendment is not warranted under the circumstances. For example, the proposed complaint seeks to add additional facts regarding Teck's notice that it was trafficking by relying on public records that have been available since as early as 1960. Teck also intends to add jurisdictional facts such as two Teck officers serving as officers in some of the national subsidiaries. However, the subject motion fails to explain why this information was not previously alleged despite being available.

  HRGC also argues that it should be permitted to amend the complaint because "litigation relating to Article III of the Helms Burton-Act is very new." (ECF No. 44 at 8.) This argument is unpersuasive because the parties both cited to recent cases reviewing similar claims under the Helms-Burton cases, such that the underlying legal theories are not so new that HRGC cannot be expected to make a determination whether it should amend its complaint after the filing of a motion to dismiss.

  Even if the Court applied Rule 15(a)(2), the Court finds that amendment would be futile. "[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *see Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (same); *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily

fail."); *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."). The proposed amended complaint fails to set forth a basis for jurisdiction over Teck. Accepting its allegations as true, Teck has mining subsidiaries in the United States, which it is "directly or indirectly owns, operates, controls, manages, and/or supervises…" (ECF No. 40-1 at ¶ 14.) Teck's activities in the United States include sharing two corporate officers with three domestic subsidiaries (out of the eight subsidiaries alleged), "offer[ing]" employment in the United States, owning seemingly unrelated trademarks, and being publicly traded in the United States. (*Id.* at ¶¶ 16-20.) However, sharing two corporate officers with some subsidiaries and *offering* employment in the United States (as opposed to actually employing), without more, does not establish jurisdiction under the effects test or Rule 4(k)(2) (HRGC's primary basis for jurisdiction). Moreover, the proposed amended complaint alleges that "Teck's U.S.-based operations alone have yielded hundreds of millions of dollars in revenue and gross profit," but does not allege if the subsidiaries share bank accounts with Teck such that the subsidiary would not be independent from the parent. *Consol.*, 216 F.3d at 1294 (noting a parent corporation "is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there," and holding that a subsidiary was not a mere agent because it had its own officers and board of directors, determined its own pricing schemes, and maintained its own bank accounts and employees.).

## 4. Conclusion

For these reasons, the HRGC's motion for reconsideration is **denied**. **(ECF No. 40.)**
**Done and ordered** at Miami, Florida on July 19, 2021.

Robert N. Scola, Jr.
United States District Judge